HARRIS, Appellant, v. LEISE, Respondent.

(135 N. W. 687.)

1. **Agency—Right to Commission on Realty Sale—Double Dealing —Directing Verdict.**

A real state agent's right to commission or compensation for procuring a purchaser is forfeited by double dealing. And where under his contract with the owner he was to

receive compensation from him, the agent's understanding with parties who were to furnish a purchaser that he was to receive compensation from them was sufficient to forfeit his right to compensation from the owner, without a mutual agreement; he not having communicated such understanding to the owner. On these facts the trial court should have sustained defendant owner's motion to direct a verdict in his favor.

**2. Real Estate Broker—Evidence of Sale.**

Where an alleged realty sale is for cash, the mere fact that the alleged purchaser is well to do is not sufficient evidence that he is ready and able to close a purchase; there should be evidence that he was provided with or had arranged for the cash with which to close the deal; the money should have been forthcoming at the vendor's residence.

Haney, J., dissenting.

McCoy, P. J., concurring in the conclusion.

(Opinion filed, April 2, 1912. Rehearing denied, June 29, 1912.)

Appeal from the Circuit Court, Walworth County. Hon. J. H. BOTTUM, Judge.

Action by J. W. Harris against G. W. Leise, upon a promissory note executed by defendant to one Nye, who assigned same to plaintff after maturity. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals. Reversed.

*E. B. Adams* and *J. E. Clayton,* for Appellant.

The law will not permit a broker to recover commission for selling land, unless he actually produced a purchaser; that is, brought the proposed purchaser to the land owner, and unless the proposed purchaser was at that time ready, willing and able, to purchase the land for the price and upon the terms and conditions stipulated in the alleged agreement between the land owner and the defendant (in this case for cash), or in lieu of presenting such purchaser, the defendant must show, that he has obtained in favor of the owner a contract from the purchaser, which is valid and enforceable by the owner himself. Watters v. Dancey, 23 S. D. 481, 122 N. W. 430; Howie v. Bratrud, 14 S. D. 648, 68 N. W. 747; McLaughlin v. Wheeler, 1 S. D. 498, 47 N. W. 816; Huntemer v. Arent, 16 S. D. 465, 93 N. W. 653, 19 Cyc. 255; Flynn v. Jordal (Iowa), 100 N. W. 326; Johnson Bros. v. Wright, 124 Iowa, 61, 99 N. W. 163;

Mattingly v. Pennie, 105 Cal. 514, 39 Pac. 200; Dent v. Powell, 93 Iowa, 711, 61 N. W. 1043.

Evidence, that the proposed purchaser has an abundance of property out of which the required payment might be made, is not sufficient evidence, that he was ready and willing to purchase. The proof must show that he had the cash in hand. Watters v. Dancey, 23 S. D. 481, 122 N. W. 430; Howie v. Bratrud, 14 S. D. 648, 68 N. W. 747; McLaughlin v. Wheeler, 1 S. D. 498, 47 N. W. 816; Huntemer v. Arent, 16 S. D. 465, 93 N. W. 653, 19 Cyc. 255; Flynn v. Jordal (Iowa), 100 N. W. 326; Johnson Bros. v. Wright, 124 Iowa, 61, 99 N. W. 163, 19 Cyc. 246; Mattingly v. Pennie, 105 Cal. 514, 39 Pac. 200; Dent v. Powell, 93 Iowa, 711, N. W. 1043.

It is clear from the evidence, that Leise was not acting as a mere middle-man in regard to the deal, but rather as an agent for Rye, and if he agreed to accept commission from Corken & Flick, that would prevent him from recovering under his contract with Rye. Durand v. Preston, (S. D.) 128 N. W. 129; Leathers v. Canfield, (Mich.) 45 L. R. A. 33 and Notes; Friar y. Smith, (Mich.) 46 L. R. A. 229, 19 Cyc. 234; Hall v. Gambrill, 92 Fed. Rep. 32, 37; Wadsworth v. Adams, 138 U. S. 380; Grasinger v. Lucas, 24 S. D. 42, 123 N. W. 77; 5 Words & Phrases, 4500.

*Brown & Smith,* for Respondent.

Appellant, having tried the case upon the theory that Flick & Corken were the agents of and represented Van Galder, the purchaser, and having argued the same on the question of "dual capacity," cannot change that theory in this court. Parish v. Mahoney, 12 S. D. 278, 81 N. W. 295; Noyes v. Brace et al. 9 S. D. 603, 70 N. W. 846; and claim that they were the subagents of this defendant in order to charge defendant with bad faith because Flick & Corken were to have gotten a commission of $4.00 per acre for buying the land for Van Galder. The $4.00 per acre commission of Flick & Corken was a matter of which defendant had no knowledge and with which he had nothing to do, being a question to be settled between Van Galder and his said agents.

WHITING, J.   This action was brought to recover the sum of some $66, claimed to be due upon one certain promissory note, given by defendant to one Rye and afterwards assigned to the plaintiff.   Defendant alleged that, after said note had become due, he contracted with Rye to find a purchaser for certain land owned by Rye, it being agreed that, if such purchaser were found, the said note should be canceled and delivered to defendant; and that, pursuant to such agreement, he found a purchaser prior to the time that this note was purchased by plaintiff.   There was a jury trial and verdict and judgment entered in favor of defendant. A motion for a new trial having been denied, plaintiff has appealed from such judgment and order denying a new trial.

[1] While there are numerous assignments of error, yet, under the view which we take of this case, it will be necessary for us to consider but one.   When the defense had rested its case, the plaintiff moved the court to direct a verdict in his favor, which motion was denied.   The testimony thereafter received in no manner strengthened defendant's defense, and, after all evidence was received, plaintiff renewed his motion, basing same upon the same grounds as when it was first interposed.   Construing the evidence, as the trial court was bound to upon this motion, in the light most favorable to defendant, yet it shows the following uncontroverted facts: Flick & Corken were a firm of real estate dealers at Mobridge, S. D.   Rye, the payee named in said note, was the owner of a piece of land near Glenham, S. D.   In August, 1909, Flick & Corken found a party who was willing to buy this land at $25 per acre.   Flick & Corken asked defendant to get Rye's price for this land.   Defendant understood that if a sale was made Flick & Corken would give him something.   Defendant saw Rye and entered into a contract with him, whereby, within two weeks, he was to procure a purchaser for this land at $21 per acre, and, if he did he was to receive his note from Rye.   He advised Rye that he would get the purchaser through Flick & Corken.   Within the two weeks he told Rye that he had procured a purchaser through Flick & Corken, and desired Rye to see Flick & Corken, which Rye afterwards did and then advised defendant that he had earned his note.   Defendant himself had noth-

ing to do with the negotiation of any sale, and never came in contact with the purchaser. Defendant did not advise Rye that he expected something from Flick & Corken. It does not appear that Rye was advised as to who the prospective purchaser was, or of the fact that Flick & Corken were to receive $25 per acre. Flick & Corken were expecting to retain $4 per acre as a commission. Flick & Corken advised Rye that they were ready to and desired to close the deal, and wanted him to sign a deed, which he refused to do. The prospective purchaser was never brought to Rye, nor was there any contract of sale entered into, either by the defendant or Flick & Corken, with the prospective purchaser in behalf of Rye; but Flick & Corken had a letter, in which the said purchaser agreed to take the land at $25 per acre.

Plaintiff's motion was as follows: "If it pleases the court, defendant having rested, plaintiff now moves the court to direct a verdict in favor of the plaintiff for the following reasons: First, that the defendant has wholly failed to prove a defense against the plaintiff's cause of action. Second, that the undisputed evidence shows that the purported purchaser was never produced or brought to Rye, the landowner; and, further, that there is no evidence in the record going to show that the defendant ever obtained, or attempted to obtain, a contract from the proposed buyer, or that he ever produced a purchaser who was ready, willing and able to purchase the land at the price of $21 an acre. Third, that, inasmuch as the undisputed evidence of the defendant shows that he was acting in a dual capacity in representing both parties to the transaction, without their knowledge and consent, the agreement between him and Rye for the payment of commission was void, and the defendant could not recover under his contract, if the same had been fully complied with."

According to the evidence. defendant, while in the employ of Flick & Corken and expecting compensation from them, and when, therefore, he must have known that Flick & Corken were expecting to realize a profit from some source, even if he did not know just what they were expecting to get for the land, contracted with Rye to find a purchaser for his land, and to receive

from Rye compensation for finding such purchaser. Instead of disclosing that he was in the employ of Flick & Corken, and that he was expecting compensation from them if a sale was effected, he merely advised Rye that he expected to find a purchaser through Flick & Corken. Thus, so far as Rye was concerned, Flick & Corken became his subagents, bound to act in all good faith toward him, and to look to defendant for their compensation. As a matter of fact Flick & Corken's interests were adverse to Rye's, and they were expecting to receive and retain for themselves and defendant $640 out of the selling price of this land, which $640, under the contract between Rye and defendant, would belong to Rye. Of course, it may be that defendant told Rye that Flick & Corken were going to get a commission out of the sale, and it may have been understood that they were to receive all they could get over and above the $21 per acre; but, if so, there should have been some proof of this fact offered. This case stands exactly as though defendant had a buyer ready to take the land at $25 an acre, and then went to Rye and made a contract under which Rye was to give him the note for finding a purchaser at $21 per acre. While he could earn the note if he found the purchaser at $21, yet, if he made a sale at $25, the other $4 would belong to Rye. Owing to his double dealing, defendant forfeited all rights under the contract with Rye. It seemed to have been the view of the trial court, as shown by one of its instructions to the jury, that, in order for the question of defendant's receiving compensation from Flick & Corken to become material, it must appear that there was a mutual understanding and agreement between the defendant and said firm that they were to pay him for his services. With this we cannot agree. For the purpose of this action, it is immaterial whether Flick & Corken had bound themselves to pay anything; ffor, so far as the good faith of the ·defendant and his duty towards Rye are concerned, the only material question is: Did defendant understand that, in case this transaction went through, he would not only get his note back from Rye, but would also receive compensation from Flick & Corken? It appears from his

own testimony that he did so understand, and that he failed to communicate this fact to Rye.

[2] Appellant urges that the evidence fails to show that the prospective purchaser was able, ready, and willing to purchase this land at the agreed price of $21 per acre. The only evidence upon this point was that of Mr. Corken, who, upon direct examination, said that this prospective purchaser was ready and willing to buy the land, and had sufficient funds to buy the same. Upon cross-examination, being asked how he knew that he was able, ready, and willing to buy this land. Corkern stated that the party had bought other land before, and had bought other land afterwards, and he knew that he was pretty well fixed. He testified that he did not offer any cash, and that he did not see any money. This court has held that the mere fact that a person is financially well to do is not sufficient evidence that he is ready and able to close a purchase where, as in this case, the sale was to be for cash. Watters v. Dancey, 23 S. D. 481, 122 N. W. 430, 139 Am. St. Rep. 1071. There is no evidence whatever to show that the prospective purchaser was provided with or had arranged for the cash with which to close the deal. At the best there was a statement, contained in the prospective purchaser's letter, to the effect that, if the deed was sent to his bank at Rock Island, Ill., the money would be forthcoming. The money should have been forthcoming at Rye's residence in South Dakota.

The judgment and order denying a new trial are reversed.

HANEY, J., dissents.

McCOY, P. J. I concur in the conclusion reached in the foregoing opinion.